IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DIANA D. POULSON** | § § § | |
| Plaintiff | § § | |
| vs. | § § | |
| TRANS UNION LLC, CSC CREDIT SERVICES, INC., EQUIFAX INFORMATION SERVICES, LLD, EXPERIAN INFORMATION SOLUTIONS, INC., DISCOVER FINANCIAL SERVICES, INC., USAA CREDIT CARD BANK AKA USAA CREDIT CARD SERVICES, SEARS, ROEBUCK & CO., INC., and CITIBANK USA, NA | § § § § § § § § § § § § | CASE NO. 2:05-CV-75 |
| **Defendants** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Citibank USA, National Association's Motion to Stay Litigation in Favor of Arbitration (Docket No. 59) and Defendant Sears, Roebuck, and Co.'s Joinder in Citibank's Motion to Stay Litigation in Favor of Arbitration (Docket No. 61). Having considered the parties' written submissions and oral arguments, the Court **DENIES** the motions.

**BACKGROUND**

Diana Poulson brings this suit complaining that Defendants misreported her account status resulting in a negative credit report. Specifically, she claims Defendants have wrongly included information relevant to her ex-husband's Sears credit card, issued by Citibank, on her credit report and this information negatively impacts her credit report.

1

When Poulson married William Henry Eckert, Jr. on August 23, 1986 he had a Sears credit card issued by Sears National Bank. During their marriage, Eckert named Poulson as an authorized user on several credit accounts that he had opened prior to their marriage, including his Sears account ("Eckert account") but she never became a cardholder or guarantor on the account. During the time in question, Poulson also had her own Sears credit card ("Poulson account"). Poulson and Eckert divorced on December 28, 2000, and Eckert was supposed to have removed Poulson as an authorized user on his Sears account, but he apparently did not. Poulson alleges that she contacted Sears in October 2001 demanding that she be removed from the records as she had no liability for any charges or future charges and did not use the Eckert Sears account, but was told that since she was not the "primary" party on the Eckert Sears account she could not make any change to the account information. She further alleges that she asked her ex-husband to have her removed from the account, and he said he would do so. Poulson claims that in late May 2004 she first learned that Eckert had amassed large credit card debt on his Sears card account and that account had been reported on her credit report. This suit followed involving not only the Sears cards, but a number of other cards, which Poulson alleges were handled in a similar manner thus damaging her credit. All of the allegations of improper reporting relate to Eckert's cards and not Poulson's.

Citibank seeks to compel Poulson to arbitration arguing that in November 2003, Citibank purchased both the Eckert and Poulson Sears accounts from Sears National Bank, and at the time of purchase sent all Sears card account holders notice that Citibank was changing the accounts' terms to include an arbitration agreement: "All claims relating to your account, a prior related account, or our relationship are subject to arbitration . . . ." The change-in-terms notice included an opt-out provision, which required account holders to mail the opt-out statement to Citibank in order to not

be bound by the new terms. Citibank does not contend that Poulson is bound by the arbitration agreement relating to the Eckert Sears account from which Poulson's claims arise, but makes the novel argument that the notice it allegedly sent to Poulson regarding her own Sears card account binds her to arbitrate the dispute before the Court relating to her ex-husband's Eckert Sears card account.

Regarding Poulson's Sears-Citibank account, Citibank contends that it did not receive an opt out notice from her, but Poulson claims that she attempted to close her account when she received notice that Citibank was purchasing the account. There is no evidence that Poulson used her Sears-Citibank card after that point in time, much less her ex-husband's Sears-Citibank card.

## APPLICABLE LAW

Arbitration is a matter of contract, and courts may require a party to submit its dispute to arbitration only if the party has expressly agreed to do so. *Personal Security & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). To determine whether the parties have agreed to arbitrate the dispute, a court must first determine whether there is a valid agreement to arbitrate between the parties and then determine whether the parties' dispute falls within the scope of the arbitration agreement. *Id.* Ordinary state law principles that govern contract formation apply to the determination of whether the parties have a valid arbitration agreement. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). In determining whether a dispute falls within the scope of the arbitration agreement, ambiguities are resolved in favor of arbitration, but this does not apply to determining whether a valid arbitration agreement exists. *Id*.

## ANALYSIS

Before determining whether Poulson's claims relate to her relationship with Citibank and are

thus subject to arbitration under the arbitration provision, the Court must first determine whether Poulson and Citibank ever had a valid agreement to arbitrate their disputes. Although Poulson's claims concern the Eckert account, Citibank does not argue that Poulson is bound by an arbitration clause related to the Eckert account. Instead, Citibank argues that through the Poulson account, Poulson agreed to arbitrate all disputes relating to her relationship with Citibank, including the disputes arising out of the Eckert account. Poulson disputes that she ever entered into such an arbitration agreement.

Citibank claims that Poulson accepted the arbitration provision because she did not send a notice opting out of the agreement when Citibank sent her the change in terms. Citibank's argument is premised on its ability to change the account terms at will by notifying the account holder. Thus, the Court must first determine whether Citibank had the right to modify Poulson's account terms to include the arbitration provision by sending an opt-out notice. Citibank, however, has has failed to produce Poulson's agreement with Sears and therefore cannot show that Poulson's original agreement with Sears allowed Citibank, as Sears's assignee, to modify the terms of the agreement by sending such a notice. Thus, Citibank has no proof that it had the right to attempt to add the arbitration provision to the terms of Poulson's account in this manner. Because Citibank has not shown that it had the right to change Poulson's account terms by sending a notice and requiring an opt-out letter, Poulson's alleged failure to opt out of the arbitration provision does not suffice as consent to arbitrate.

Therefore, Citibank must show that Poulson consented to arbitration by some other means.[1]

---

[1] The Court's determination of whether Poulson agreed to modify the Sears agreement is hindered by not having that agreement. Presumably, Poulson's original agreement with Sears contained a choice-of-law clause stating which state's law apply to contractual disputes. Citibank has not produced that agreement, and the Court cannot determine whether Poulson and Sears agreed that a particular state's law should govern the interpretation of

In the context of stand-alone arbitrations agreements, binding promises are required by both sides as consideration to create the contract. *In re AdvancePCH Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005). If the arbitration agreement is part of an underlying contract, the rest of the parties' agreement provides the consideration. *Id*. Poulson claims that when she received the notice of the change in terms, she contacted Citibank to close the account. Poulson has no evidence of this, and Citibank claims to have no record of this. But Poulson did cease using the card after she allegedly attempted to close the account, which stands as strong circumstantial evidence that she attempted to close the account. If Poulson attempted to close the account in response to a change in terms, she clearly did not accept Citibank's offer to change the terms. Since she attempted to close the account, maintenance of the account could not serve as consideration for the arbitration provision. *Cf. id*. ("Having used PCS's services and network to obtain reimbursements for 10 years, the pharmacies cannot claim their agreement to arbitrate was without consideration."). Citibank has no evidence of a binding promise by Poulson to be bound by the arbitration agreement.

Citibank has not carried its burden in showing Poulson is bound by the arbitration provision. Citibank has not shown that it had the right to modify the terms of the account in the manner that it attempted; nor has Citibank shown that Poulson otherwise agreed to modify the account terms to include an arbitration agreement. Since there was no valid agreement to arbitrate, the Court does not need to reach the second prong of the analysis and determine whether the dispute falls within the terms of the arbitration provision.

## CONCLUSION

Citibank has not shown that Poulson is bound by a valid arbitration agreement. Accordingly,

---

the original agreement. The Court will apply Texas law.

the Court **DENIES** Citibank's motion to stay and Sears's joinder in that motion.

**So ORDERED and SIGNED this 22nd day of December, 2005.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**